## ARCENEAUX v. TECHE LINES, Inc.
### No. 1015.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1932.

Burke & Smith, of New Iberia, for appellant.

Mouton & Davidson, of Lafayette, for appellee.

**ELLIOTT, J.**

In a collision between an automobile belonging to and while being driven by Eddie P. Arceneaux and an omnibus belonging to Teche Lines, Inc., while being driven by its driver and employee, Robert Latina, the automobile belonging to Arceneaux was demolished. Arceneaux himself received an injury to his knee and bruises on his body and limbs.

Arceneaux, alleging that his car was worth $275, that he had suffered personal injuries amounting to $1,200, loss of salary $165, medical fees, $20, brought suit against the defendant, Teche Lines; Inc., for $1,660.

He alleges that he was driving his automobile on the streets of the city of Lafayette, at a reasonable rate of speed, approximately at 12 miles an hour, having due regard for the traffic, the use of city streets, and safety of the public in doing so; that defendant's omnibus, driven in a negligent and reckless manner, and at a rate of speed greater than was permitted by the municipal ordinances of the city of Lafayette, ran into his automobile at the intersection of Voorhies and Lafayette streets, demolishing his automobile and in-

juring petitioner; that, if it had not been for defendant's unlawful and reckless speed, the omnibus could have been stopped and the collision avoided.

There was judgment in the lower court in favor of Arceneaux for $785. Defendant has appealed.

The collision in question occurred on June 25, 1931. The plaintiff was driving westward at the time on Voorhies street, and defendant's omnibus was going northward on Lafayette street.

The testimony of the witnesses is so conflicting as to who was at fault for the collision that we rely largely on the corroboration afforded by certain facts and circumstances established on the trial of the case without dispute.

The plaintiff was an experienced automobile driver. The defendant's omnibus was also being driven by an experienced driver. It was about 10 o'clock a. m., and it is not said that the day was cloudy.

The plaintiff claims that, when he reached the intersection in question, driving at approximately 12 miles an hour, he looked to the right and saw nobody coming, upon which he started across the intersection; that after entering it he heard the horn of defendant's omnibus coming from his right up Lafayette street. The evidence indicates that the view from the southwest corner of this intersection is obstructed by shrubbery, and on that account you cannot see very far down in the middle of the street, until you enter the intersection, when of course you can look straight down the street.

The plaintiff testifies that, having entered the intersection, after looking both ways and seeing nothing, the horn on the omnibus having sounded only after he had entered the intersection, he had the right to proceed; that it was the duty of the omnibus driver to see him; that the omnibus was then coming at a distance which he estimates at about 75 feet, and at about 35 miles an hour; that he tried to get across the intersection ahead of it, but its speed was such that he could not, and the omnibus struck his automobile just behind the steering wheel, knocking it against the fire plug near the southwest corner of the intersection; that the omnibus then crossed the intersection and the curbing and struck a two-story frame house with such violence that it moved it back some 5 or 6 inches on its foundation.

The plaintiff's testimony is corroborated by that of J. C. Broussard. Mr. Broussard claims that he was engaged in work inside of his building, the one which was struck by defendant's omnibus, about 20 feet from the door; that he heard the horn of defendant's omnibus sounding as it came up Lafayette street and looked up; that, when he looked up, plaintiff's car was in the intersection, plaintiff having entered it; that defendant's omnibus was at the time coming up Lafayette street about 75 feet away at a speed which he estimated at 35 or 40 miles an hour; that the omnibus knocked plaintiff's automobile in a northwestern course against the fire plug, the impact taking place in about the center of the intersection; that the omnibus then crossed the curbing and impacted with terrific violence against the house, moving it some 5 or 6 inches on its foundation, jostling and moving the furniture in the house, breaking glasses, etc.

Mr. Broussard is shown by the record to have a claim against Teche Lines, Inc., based on injury done to his house by defendant's omnibus at the time in question. Therefore he has a personal interest in showing that defendant's driver was driving recklessly and carelessly, but his answers are given in a straightforward way, and we do not see any indication of anxiety to make up a case against the defendant.

The testimony of the plaintiff and of the witness Broussard in the matter of defendant's speed and too fast driving on a city street receives support from the fact that defendant's omnibus was being driven on Lafayette street in said city at such speed, under brakes, that it was not stopped in the intersection by plaintiff's automobile, and was only stopped by its impact with the Broussard building, which it moved back on its foundation for 5 or 6 inches.

The omnibus must have been running as fast as estimated by plaintiff and Broussard, else such striking energy would not have existed, and it could have been stopped before it reached the house.

Robert Latina, driver of defendant's omnibus, and a man named Sullivan, who was a passenger in and sitting on the left-hand side of it, both testify that the horn of the omnibus was sounded by the driver when about 75 feet from the intersection; that plaintiff's car was not entering the intersection at that time; if so, they did not see it; that the omnibus entered the intersection first. But the witness Sullivan was shown some pictures showing the appearance of plaintiff's automobile after the wreck, and he stated that he could not see them, due to defective eyesight. We therefore conclude that the failure of the witness Sullivan to see plaintiff's car entering the intersection ahead of the omnibus is excusable on account of his bad eyesight.

Another witness, Mr. Wright, walking south on Lafayette street, saw the bus coming from a distance of a block or a block and a half. The width of the block is not stated, but we take it that he was distant, say, 250 or 300 feet. He says that he heard the sound of the horn of the approaching omnibus; that entered the intersection first, and that plain-

tiff's car came into the intersection after the omnibus.

But our conclusion is that the omnibus was running faster than plaintiff's automobile. The evidence shows that the omnibus struck the automobile in the side. The automobile could have dashed in front of the omnibus as Latina says it did, but that is not likely. It seems more probable that the automobile was already in the intersection, and was intercepted by the omnibus, as claimed by plaintiff and Broussard.

Then again the distance which Mr. Wright was from the scene prevented him from seeing as accurately as Mr. Broussard, who was close by and in position to see the exact happening. We think the testimony of the plaintiff, Arceneaux, and of the witness Broussard in the matter of speed and as to which was first to enter the intersection is so strongly corroborated in the way stated that the lower court made no mistake in placing the responsibility for the collision on the driver of defendant's omnibus.

There was some evidence introduced, the purpose of which was to show that Lafayette street was at the time used as a detour for a part of the highway known as the Old Spanish Trail. But no city ordinance nor proclamation of the highway department nor other official marking to that effect existed.

The evidence indicates that the street regularly used as part of the Old Spanish Trail was being repaired, but various streets were used as a detour for the highway mentioned, Lafayette and others, and we think that defendant's omnibus in using the streets was bound to observe the municipal ordinance on the subject of speed. The city ordinance permitted a speed of but 12 miles an hour, and not only that, but the omnibus should have respected the prior entry of plaintiff's automobile in the intersection and acknowledged its right to pass ahead. It is our conclusion that the omnibus driver failed in his duty in the matter of speed and in his obligation due to plaintiff's prior entry in the intersection. The evidence does not show that the omnibus was being driven on an officially recognized highway; consequently Act No. 296 of 1928 is not governing. But suppose otherwise, our conclusion that the happening was due entirely to the fault of the defendant and that it is obliged to repair the damage thereby caused remains unchanged.

The defendant contests the amount awarded to the plaintiff by the lower court. We have examined these items allowed. We think that plaintiff is entitled to recover the amount allowed him in the lower court on account of the loss of his automobile, the loss of wages, and for medical expenses, but the lower court allowed him $400 on account of personal injuries. The only injury of any serious consequence that plaintiff received was to his knee. His knee injury caused him considerable pain, and he laid up three weeks on account of it, but it was not of such nature as to cause him at any time to be confined to his bed and not even to his room. At the time of the trial and in fact after three weeks he was entirely well. The injury to his knee was the only serious injury. The most of his pain and suffering was due to his knee, and in less than three weeks his knee was about as good as ever and caused him no further pain except that at intervals he will endure some discomfort on that account, and that fact has been considered. We think $250 ample compensation for all his injuries and pain and suffering, so the item of $400 will be reduced to $250, but the other items allowed in the lower court will remain unchanged. This necessitates reducing the judgment from $785 to $635.

For the reasons stated, the judgment appealed from is now reduced from $785 to $635, and, as thus amended and corrected, the judgment appealed from is affirmed; plaintiff-appellee to pay the cost of appeal, the cost in the lower court to be paid by defendant-appellant.

MOUTON, J., not participating.