## HINTON v. TRI–STATE TRANSIT CO. OF LOUISIANA, Inc.*

### No. 4577.

Court of Appeal of Louisiana. Second Circuit.

Dec. 1, 1933.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Barksdale, Warren & Barksdale, of Ruston, for appellee.

DREW, Judge.

In this case the lower court, in a well-prepared opinion, has discussed the testimony and correctly decided the issues of fact. We fully concur in the opinion as to the liability of defendant for the amount of damages plaintiff received in the accident.

The opinion of the lower court is as follows:

"In this suit plaintiff seeks to recover damages resulting from an intersectional collision between his Chevrolet automobile and a passenger bus owned and operated by defendant. The collision occurred on the 22d day of May, 1932, at the intersection of Georgia avenue and North Vienna street in the town of Ruston. Plaintiff was driving his car north on North Vienna street, and defendant's bus was being driven by an employee west on Georgia avenue.

"North Vienna street is a right of way street, made so by Ordinance No. 257 of the Town of Ruston. There is a traffic light signal at the intersection involved, but at the time the collision occurred this signal had not been put in operation for the day. Both plaintiff and defendant claim to have had the right of way over the intersection and to have been in possession of it at the moment of the collision.

"It is my conclusion, arrived at from a careful consideration of all the testimony bearing on the point, that plaintiff was both entitled to and actually had possession of the right of way over the intersection at the time of the collision. The testimony of the witnesses at this point is very conflicting. It is a plain case of the court having to accept the testimony of the witnesses for one side and rejecting that of the other. There is no other way, as I see it, by which a conclusion can be reached.

"Plaintiff testified that as he approached the intersection, he was traveling from 20 to 25 miles per hour. When at a point some 80 or 100 feet from the intersection, he heard the driver of the bus sound its horn or signal for the intersection. He says the bus was then about 150 feet east of the intersection. Being nearer to the intersection and knowing that he was traveling a right of way street, plaintiff proceeded on to and into the intersection. When plaintiff's car reached the intersection, the bus was some 15 or 20 feet from the intersection. Plaintiff assumed, and rightfully so, that the driver of the bus would observe the ordinance of the town, slow down or stop the bus, and give him the right of way. But, on the other hand, both cars continued, without stopping, or apparently slowing down, and the collision followed.

"Mr. Charlie Tomlinson, a witness for plaintiff, testified that he was standing on the north side of Georgia avenue at a point some 20 or 25 feet west of North Vienna street when the accident occurred and witnessed

*Rehearing denied January 3, 1934.

the entire occurrence. I may say right here that I have personally known Mr. Tomlinson for a long time and I know him to be a man whose integrity and veracity are beyond question. I believe his testimony and I shall accept his version of the occurrence as being the correct one. He says that plaintiff was traveling 20 or 25 miles per hour and that the bus was traveling about twice as fast; that plaintiff's car entered the intersection first; and that when it did enter the intersection, the bus was a distance of about twice the length of the bus away from the intersection. He corroborates plaintiff's testimony in every essential particular.

"Mr. I. E. McGuire, another witness for plaintiff, was about 30 or 40 yards from the intersection, coming down North Vienna street toward the intersection, and saw the collision. He says that plaintiff's car entered the intersection first. Mr. McGuire is a reputable citizen of Ruston and a disinterested witness.

"In reaching the conclusion that plaintiff actually had the right of way at the intersection, I have not overlooked or failed to consider the testimony of Frank Mathews and T. J. Johnson, witnesses for defendant. Frank Mathews testified that he was on his way to Monroe and had approached the intersection involved from the north, and that, in doing so, he saw plaintiff's car coming toward him from the south and the bus coming toward him from the east. Inasmuch as he would have had to cross the pathway of both cars, in continuing his course toward Monroe, he stopped his car near the curb on the west side of North Vienna street, just a few feet from the intersection, awaiting the passage of plaintiff's car and the bus out of his route, before continuing on his journey. He says that the bus entered the intersection first. He says, also, that he was the first person to reach plaintiff's car, after the collision, and that he opened the door of plaintiff's car and asked him if he was hurt. Strange as it may seem, plaintiff denies this. Plaintiff says he never saw Mathews there at any time. Mr. Tomlinson says he was the first person to plaintiff, after the collision, and that it was he who opened the door of plaintiff's car. He never saw Mathews at any time. In fact, nobody seems to have seen him there but the driver of the bus, Mr. Johnson. I do not say that he was not there, but I do not believe his testimony, as against the testimony of plaintiff, Mr. Tomlinson, and Mr. McGuire, as to what happened in connection with and surrounding the collision of the two cars.

■ "The driver of the bus, T. J. Johnson, testified that he was driving the bus at a speed of about 15 miles per hour when he reached the intersection. He says he saw plaintiff's car about the time he reached the intersection, and that plaintiff's car was about 10 feet back from the intersection when he entered it.

"I think this witness is mistaken as to which car entered the intersection first. Plaintiff's car entered it first, but, if not, then the driver of the bus was negligent in entering a right of way street without first stopping his bus, or, at least, slowing it down to where he could stop it in an instant, and look both ways on North Vienna street and ascertain that there was no traffic approaching the intersection before he entered it. If he had done that, he would have seen plaintiff's car approaching the intersection within such a distance that the driver would have known that he could not clear the intersection before coming into collision with plaintiff's car. He had no right to enter this right of way street without and until he had ascertained that he could safely pass over it without coming into violent contact with the traffic on that street. In entering the street intersection as he did, he did not respect the ordinance granting to travelers on Vienna street a right of way over travelers on Georgia avenue and the right then being exercised by plaintiff under the ordinance in traveling on that favored street. He both looked and undertook to stop the bus when it was too late to do any good.

"The driver of the bus was, therefore, negligent in entering the intersection when he did and in the manner he did, and his negligence, in that respect, is the sole and proximate cause of the collision and resulting damage. As I view the case, the doctrine of the last clear chance does not enter the case, in so far as the plaintiff is concerned. Dameron Pierson Co. v. Stafford, 1 La. App. 506; Norwich Union Ind. Co. v. Cohen, 1 La. App. 512; Stern v. Yellow Cab Co., 2 La. App. 273; Plick v. Tusa, 14 La. App. 330, 124 So. 678; Arceneaux v. Teche Lines (La. App.) 143 So. 533; Hamilton v. Lee (La. App.) 144 So. 249; Murphy v. Hartley (La. App.) 144 So. 785, 787.

"Defendant, on account of the negligence of the driver of its bus being the sole and proximate cause of the injury and damages caused plaintiff in the collision, is liable to plaintiff for the full amount of such damages.

"Plaintiff, in his brief, claims that he has proved, in addition to the injuries suffered to his person, the following items of damages, to wit:

"Cost of repairing his car, $383.85.

"Towage of his car, $1.50.

"Storage charges, $7.

"Rent of another car due to the loss of use of his own, $30.

"Loss of time and expense of extra help due to the collision, $150.

"'The measure of damages which a plaintiff may recover against a defendant who has injured his automobile in a collision is the cost of having his car made as good as it was before the accident.' Croft v. Southern Hardwood Lumber Co. et al., 7 La. App. 274.

"E. L. Crump, a skilled auto mechanic, testified that it would cost $383.85 to put plaintiff's car in as good condition as it was before the accident. His testimony on this point is unimpeached, and that item is proved. The fact that plaintiff sold his car later for a much less amount than that, as I see it, has nothing to do with the case. It was plaintiff's business to sell the car for whatever he considered it worth, without prejudice to his right to recover such damages as the law allows in the case.

"I think the evidence sufficiently proves the following items, to wit:

"Towage costs, $1.50.

"Storage charges, $7.

"Medical expenses incurred, $4.50.

"Rental on car, $30.

"It appears that plaintiff kept no record of the amount expended by him for extra help made necessary on account of his disability to work resulting from the accident. In fixing or estimating such expenses he used the words 'about,' 'imagine,' 'as much as,' etc., in connection therewith. The result of his testimony on this point is that it is impossible to fix, with any degree of certainty, what the amount of his expense was. I think I can definitely say that the evidence shows that he spent $42.50 for labor. He is sure he spent as much as $150, but it is impossible, from his testimony, to determine just how he reaches that figure.

"Plaintiff claims damages in the sum of $700 for injury to his finger and $300 for pain and suffering, resulting from the accident.

"He suffered considerable shock and considerable pain following the accident. He was practically disabled from doing work for several months. He was closely confined to his home for some 10 days. He suffered a cut on the little finger of his left hand. It is now practically stiff. When he closes this hand, this finger stands out straight, or nearly so, and interferes with his gripping any object with that hand. It seriously interferes with his work.

"In a situation, such as this one, it is most difficult to say what would be reasonable damages. I know of no cause, and none has been cited by counsel, that would guide the court in fixing a just amount. It is my opinion that $150 will adequately compensate plaintiff for all of his pain and suffering and the injury to his finger.

"Summing up the damages allowed, we have the following, to wit:

| | |
|---|---:|
| Damages to automobile | $383.85 |
| Towage cost | 1.50 |
| Storage costs | 7.00 |
| Medical expenses | 4.50 |
| Rental on car made necessary by accident | 30.00 |
| Expenses for extra help | 42.50 |
| Pain, suffering and injury to finger | 150.00 |
| Total amount of damages allowed | $619.35 |

"For the reasons herein assigned, plaintiff should have judgment in his favor and against the defendant, in full settlement of all damages incurred by him as a result of the collision involved, the sum of $619.35, with 5 per cent. per annum interest from judicial demand, until paid, and all costs of this suit. And it is so ordered.

"E. L. Walker, Judge."

■ However, we disagree with the lower court as to the quantum of damages. It is proved that the cost of repairing the automobile was estimated at $383.85, and this amount was allowed plaintiff. The evidence is also conclusive that the value of the car, prior to the accident was from $275 to $300. Plaintiff did not choose to have the repairs made, but sold the car for $30. If he had had the car repaired and it cost the amount awarded as damages, we would agree with the judgment of the lower court in that respect. But since plaintiff sold the car for $30 and did not choose to have it repaired, he can certainly recover no more than the difference between the value of the car before the accident, and the amount he received for it afterwards. The proved value of the car before the accident was $275, and when we deduct the price received for it, $30, we have a balance of $245, the actual damage suffered by plaintiff, in so far as the car is concerned; and wherein the lower court awarded damages for the car in the amount of $383.85 it will be reduced to the amount of $245.

■ The other item of damage for pain, suffering, and injury to the finger, fixed by the lower court at $150, we think too small an award. The facts upon which this amount is based are set out by the lower court in the following language, and with which we fully agree:

"He suffered considerable shock and considerable pain following the accident. He was practically disabled from doing work for several months. He was closely confined to his home for some ten days. He suffered a cut on the little finger of his left hand. It is now practically stiff. When he closes his hand, this finger stands out straight, or nearly so, and interferes with his gripping any object with that hand. It seriously interferes with his work."

We think a proper award for this item of damages is $500, and the judgment of the lower court wherein it awarded $150 should be increased to the sum of $500. The other items of damage as fixed by the lower court we think are correct.

It therefore follows that the judgment of the lower court is amended by increasing the amount of the award to plaintiff from $619.-35 to $830.50; and as thus amended, the judgment of the lower court is affirmed, with costs.