HERBERT v. LANGHOFF et al. *

No. 16228.

Court of Appeal of Louisiana. Orleans.

Dec. 2, 1935.

 

D. Thomas Salsiccia, of New Orleans, for appellant.

Sanders, Baldwin, Haspel & Molony, of New Orleans, for appellee Langhoff.

Robert G. Polack, of New Orleans, for appellee Miss White.

JANVIER, Judge.

Mrs. Catherine Ann Herbert, widow of William Bernard Gill, drove her Chevrolet automobile to the gasoline filling station and repair shop of William A. Langhoff for the purpose of purchasing seven gallons of gasoline. After being served from the gasoline pump in front of the establishment, she asked the negro man who had operated the gasoline pump whether she could have her car washed. Receiving an affirmative answer, she arranged with the negro to drive her to her home and to then return the car and wash it. She stated to the negro, Simmons by name, that if, after washing her car, he would drive it to her house, she would return him to the filling station. She claims that she gave the negro a $5 bill and instructed him to have it changed and to deduct an amount to pay for the gasoline which she had purchased, and also 50 cents, which was to be the charge for the washing of the car.

The negro admitted all of the above set forth facts, except that he stated that the quantity of gasoline served to plaintiff's car was only two gallons.

Simmons, the negro, drove plaintiff to her home and then returned to the filling station, where he washed the car. After doing so he proceeded to return it to plaintiff's residence so that she might receive it and in turn return him to the filling station. While he was driving the Chevrolet to plaintiff's home, the car, on the corner of Dublin street and S. Claiborne avenue, was badly damaged under circumstances which plaintiff alleges show joint fault on the part of Simmons and Miss Jeannie Copes White, the owner and operator of a Studebaker automobile which was crossing the intersection at the same time, and which either collided with plaintiff's car, or very nearly did so, with the result that plaintiff's car, after proceeding an additional 90 or 100 feet down S. Claiborne

avenue, turned over and was badly damaged.

Mrs. Gill alleges that, at the time, Simmons was acting within the scope of his authority as an employee of Langhoff, and that the latter is, therefore, legally responsible for the damage caused by the said employee, and she also alleges that Miss White, the driver of the other automobile, was also negligent, and she seeks solidary judgment against the two defendants for the amount which she claims will be necessary to restore her car to its prior condition, and she also claims $5 which she expended in removing the car from the scene.

Defendant Langhoff denies that Simmons was in his employ, and he maintains that he, Langhoff, is in no way responsible for the results of any negligent acts of the said negro.

Miss White, the other defendant, denies that she was in any way at fault, and asserts that the accident was caused solely by the negligence of Simmons in driving plaintiff's car at too high a rate of speed and in swerving back and forth across the roadway, and in losing control of the car to such an extent as to permit it to turn over and sustain damage.

The district judge reached the conclusion that Simmons was not in the employ of Langhoff, and he held the latter to be in no way responsible for the results of the torts of the former, and he also held that Miss White had in no way caused or contributed to the accident, and that, therefore, there could be no judgment against her. He dismissed the suit as against both defendants. Plaintiff has appealed.

█ We deem is expedient to first investigate the evidence with regard to the occurrence of the accident before giving consideration to the question of whether Langhoff may be held responsible for the acts of Simmons, because the latter question need not be considered at all unless we shall first reach the conclusion that Simmons was negligent in the operation of the car, and that that negligence caused or contributed to the accident.

The Chevrolet of plaintiff, driven by Simmons, was proceeding down South Claiborne avenue, and the Studebaker of Miss White was on its way on Dublin street towards the Mississippi river.

Claiborne avenue is a wide boulevard, having two paved driveways separated by a broad canal. Dublin street, at a right angle, crosses both sides of South Claiborne avenue, as well as the canal. The record shows that after Miss White's car had crossed the lakeside driveway of the avenue and was on that portion of the intersection which is over the canal; she passed a truck driven by a colored man bearing the name Steib, and that the said Steib saw the Chevrolet coming from his right and also noticed the Studebaker passing alongside him to his left.

We are also convinced that the Chevrolet, with Simmons at the wheel, was approaching at a high rate of speed, and that it was swerving from side to side on the roadway. Miss White saw it as it approached, and claims to have stopped her car to permit it to go by. She states that she backed slightly to make certain that her car would be out of the path of the approaching Chevrolet, and that while she was standing still the Chevrolet swerved towards her striking the front bumper a glancing blow, and that it then careened first to one side and then to the other until it finally turned over twice before coming to rest on its side some 90 feet below the lower line of the intersection.

We have no doubt whatever that the speed of the Chevrolet was excessive, and that it was swerving and careening on its way down the street. It would not have continued for a distance of 90 feet and it would not have turned over twice had its speed not been great, because it is quite clear that the contact between it and the Studebaker was very slight indeed. Certainly the blow struck it by the other car was not sufficient to cause it to careen or to swerve or to turn over had its speed not been greatly excessive at the time of the impact.

The Studebaker was not damaged. The record shows that while there is a very slight dent in the right front fender, there is grave doubt whether this dent resulted from the impact. We believe, however, that Miss White is mistaken in her statement that her car was standing still when the other car swerved into it. She must have been moving slightly at the time, because she stated that while the Chevrolet was traversing the 90 feet which intervened between the intersection and the point at which it turned over, she drove her car across the riverside driveway of Claiborne avenue and brought it to a stop in front of the second house from the corner on Dublin street. We cannot believe that had she not been moving at the time she could

have started her car and could have proceeded so far in the short space of time required by the Chevrolet to go from the corner to the point at which it turned over. But we feel that, had there been any care whatever exercised by Simmons in the Chevrolet, that car would have passed in safety, and that Miss White did all that was required of her when she reduced the speed of her car to the minimum and thus afforded Simmons ample space and opportunity to cross in front of her, which he would have done safely had he not negligently and at high speed swerved the car, which he was operating, across the roadway and into the bumper of the Studebaker.

We conclude that it was Simmons' negligence alone which caused the damage to plaintiff's car, and we, therefore, now pass to a consideration of the question of whether Langhoff may be held responsible for the actions of Simmons.

There is no positive evidence contradictory of that offered on behalf of defendant Langhoff to show that, as a matter of actual fact, the negro Simmons was not in his employ, and, in the absence of such evidence, we cannot but conclude that there was no relationship of master and servant between them.

But though there may not have been actual employment, still there may be liability because one may render himself liable by permitting another to be misled into the belief that such relationship exists, where the other in good faith, acting upon such belief, sustains loss as a result of dealing with or through the supposed servant as an employee.

Langhoff states that he is the owner and operator of the filling station and of the repair shop, but he declares that he has no connection with the car washing operations of Simmons, except that he, Langhoff, furnishes the water and permits Simmons to solicit business from patrons of the filling station and of the repair shop while those patrons are being served.

In the absence of evidence to the contrary, we must accept as true Langhoff's statement that Simmons washes the cars in the street and not in the premises operated by him; but the fact remains that he, at no time, notified any one, who was approached by Simmons on his premises, that Simmons was not an employee of his, and that he, Langhoff, would not be responsible for the acts of the said Simmons. It would

have been most reasonable for a person being served at Langhoff's station, if approached by Simmons, to consider him as an employee of Langhoff.

In the particular case under investigation, in addition to the fact that Simmons was soliciting car washing business on the premises, he was also apparently in charge of the station and had actually served gas from Langhoff's pumps. It will not do to say that Simmons had no authority to serve gas from the pumps, because obviously no one else was there. There was no duty in plaintiff to inquire for the proprietor as Langhoff contends she should have done.

The case might have been different if it had been shown that Simmons was a mere trespasser or meddler who had no connection whatever with the station; but it is shown, on the contrary, that he was not a trespasser or meddler and was permitted to remain constantly in front of the station, apparently holding himself out as an employee and soliciting business such as is ordinarily done by filling stations and garages.

Filling station proprietors owe some duty of protection to their customers against irresponsible meddlers. They cannot permit such persons to solicit from customers work apparently to be done for account of the proprietor and then to escape responsibility on the grounds urged here.

It is quite evident that plaintiff was misled into the belief that she was dealing with the defendant Langhoff through an authorized agent or employee, and it follows that since she was misled through the fault of Langhoff, he is responsible for her damage.

There is no doubt whatever of the existence of the general rule that a principal is estopped to deny the authority of his employee or agent where he "intentionally, or by want of ordinary care, induces third persons to believe another to be his agent, although he did not in fact employ him." Corpus Juris, volume 2, Verbo "Agency," section 70, page 461.

Obviously a patron of a filling station is justified in assuming that a colored attendant, who is permitted to serve gas, is authorized to solicit car washing business for the filling station. If Langhoff intended to limit Simmons' authority to the solicitation of his own business, he should have taken steps to prevent his customers'

and patrons from dealing with Simmons on any other basis. Not only is Langhoff estopped to deny the agency or employment of Simmons under the circumstances, but he is estopped to deny the extent of Simmons' apparent authority, for "as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority which is that authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses and which the principal is estopped to deny." Corpus Juris, volume 2, Verbo "Agency," section 211, page 570.

The principles which we have discussed are recognized in Louisiana as is evidenced by a reading of the following decisions: T. L. Airey & Co. v. Okolona Savings Institution, 33 La.Ann. 1346; Thomas M. Rankin v. Nolan Stewart et al., 5 La.Ann. 357; American Disinfecting Co. v. Police Jury, 10 La.App. 389, 120 So. 135, 137.

We particularly call attention to the fact that the principle recognized in the cases cited is enforced not only where the principal intentionally allows the agent to exercise authority, but also where the principal by negligence "induces third persons to believe another to be his agent." American Disinfecting Co. v. Police Jury, supra.

■ Nor do we believe that when Simmons undertook to drive plaintiff's car to her home after washing it he must be held to have stepped out of his character as an apparent employee of the defendant Langhoff. There is nothing unusual about the rendering of such service by a garage company, and plaintiff was justified in assuming that this garage company would perform such service. In delivering her car to her, Simmons did not make himself her servant. The facts in Williams v. Weil Co., 1 La.App. 188, seem to be slightly different and indicate that there was a private agreement between the garage attendant and the owner of the car, of which, to the knowledge of the owner of the car, the garage proprietor knew nothing.

■■ The amount claimed is obviously grossly excessive. The repairs have not been made, and there is no reason for us to conclude that they will ever be made.

Of course, it is true that it has been held that even though repairs may cost more than the purchase price of another similar article, nevertheless, the owner of the damaged article may have the repairs made and is not limited in his right to recovery to the value of some other similar article. Blackner Rotary Pump Co. v. Rantz Eng. & Mach. Works, Inc., 1 La.App. 290; Lucas v. Andress, 17 La.App. 329, 136 So. 207; Bianchi v. Mussachi, 1 La.App. 291; Vila v. Westfeldt, 7 La.App. 552; Harrison v. Loyocano, 12 La.App. 228, 125 So. 140; Ciolina v. Patton (La.App.) 148 So. 729.

But where the repairs are not made and the damage is so extensive as to warrant the conclusion that the owner, in truth, considers that he has sustained a total loss, the damage sustained is more properly gauged by the value of the article prior to the time at which it sustained the damage. Luttegeharm v. Pelican Cracker Factory Co., Inc. (La.App.) 161 So. 625; Hinton v. Tri-State Transit Co. of La., Inc. (La.App.) 151 So. 116.

The car damaged was a Chevrolet which had been in service more than four years. The evidence convinces us that by no stretch of the imagination can it be said to have been worth the amount claimed for repairs. It is shown to our satisfaction that the actual value of such a car was not over $200. Plaintiff is, of course, entitled, in addition, to the amount expended in moving the car, which was $5.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed in so far as it dismisses the suit as against Miss Jeannie Copes White.

It is further ordered, adjudged, and decreed that the judgment, in so far as it dismisses the suit as against William A. Langhoff, be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff, Mrs. Catherine Ann Herbert, widow of William Bernard Gill, and against defendant William A. Langhoff, in the full sum of $205, with legal interest from judicial demand, and for all costs.

Affirmed in part; reversed in part.

HARRY McCALL, Judge ad hoc, participating in the absence of Judge LECHE.