BARNETTE, Judge.
This is an appeal in two suits for property damage arising out of a single intersectional automobile collision. Three automobiles were allegedly involved, two of which were extensively damaged. No damage was sustained by .the third automobile allegedly involved.
In proceeding No. 2713 on our docket, the defendants Edward Bourquard, James E. Manasco and Checker Cab Company of New Orleans, Inc., have appealed sus-pensively from a judgment against them in solido in favor of the plaintiff Edward Johnson, Sr., in the sum of $417.10. There was no appeal from the judgment insofar as it rejected plaintiff’s demands against the defendant Isaac J. Williams, and that portion of the judgment is now final. In proceeding No. 2714, Edward Bourquard, the plaintiff in that suit, has appealed from the judgment rejecting his demands for damages against the defendants in that suit, Isaac J. Williams and his insurer, the General Guaranty Insurance Company. The issues in both suits involve only questions of fact and quantum of damage.
On January 26, 1964, at about 11 p.m., Isaac J. Williams was driving his Oldsmobile automobile along Broadway and was approaching the interesection of Fig Street and Broadway. Williams was traveling toward Lake Pontchartrain. A Checker Cab, owned by defendant Bourquard and driven by defendant Manasco, was proceeding on Fig Street in a direction toward Carrollton Avenue. Thus, the Odsmobile was approaching from the left of the cab. Plaintiff Johnson’s Ford automobile was parked on Fig Street, facing away from Broadway. It was parked on the left side of the street with its left front wheel near an upward-projecting iron storm sewer cover. Broad *676 way at this point is a two-way street, 26 feet wide. Fig Street is 30 feet wide. This is an intersection of streets of equal dignity, and there are no stop or yield signs posted on either street.
The Oldsmobile and cab reached the intersection at about the same time, and it is seriously disputed whether there was an impact between them. The cab allegedly swerved to the right, then back to the left and into plaintiff Johnson’s parked Ford, causing extensive damage to both cars.
Johnson brought suit for damage to his Ford in the amount of $417.10 against Bourquard, the cab owner; Manasco, its driver; Checker Cab Company; and Isaac J. Williams, the owner of the Oldsmobile, seeking judgment jointly and in solido. Edward Bourquard brought suit against Williams and his insurer, General Guaranty Insurance Company, for $431.93 alleged damage to the cab, which he contends was caused by the negligence of Williams.
There is no question of plaintiff Johnson’s right of recovery. There is an issue, however, over the extent of his damage, which will be discussed below. The serious issues are whether Williams or Manasco were solely or jointly guilty of negligence which caused Johnson’s damage, and whether Williams was guilty of negligence for which the cab owner is entitled to recovery of damages against him and his insurer. The trial court resolved both these questions in favor of Williams and against the cab driver and its owner. Much importance is given to the judgment of the trial judge in the determination of issues of fact and the weight given to the credibility of the conflicting testimony of the witnesses. Except for manifest error, it will not be distributed. There is no manifest error apparent to us, but on the contrary, we are of the opinion that the evidence clearly preponderates in support of his judgment.
As stated above, there was serious issue as to whether the Oldsmobile driven by Williams actually came into physical contact with the cab. In addition to this we have the usual conflict of testimony on such disputed facts as speed, keeping a proper lookout, and peremption of the intersection.
Williams and his wife, who was a passenger in his car, each testified. They stated that they saw the reflection of the headlights of the cab and heard it approaching the intersection. Both testified that Williams began to brake his car in an exercise of caution as he approached the intersection. They said the cab came out of Fig Street at a fast rate of speed, and that he, Williams, then applied his brakes more forcefully to bring the Oldsmobile to a sudden stop. His skid marks were about 18 feet. The Oldsmobile came to a complete stop with the front end a few feet into the intersection. We are impressed with their testimony, as was the trial judge.
The cab driver, Manasco, whose testimony was given by deposition, said he was traveling about 10 to 15 miles per hour and that he looked in both directions before entering on Broadway. He stated that he did not see the Oldsmobile until the moment of impact. Manasco said the Oldsmobile struck his left rear fender and bumper, from which impact his car was thrown out of control.
The Oldsmobile was not moved until after the investigating officer arrived. He testified at the trial some two years and seven months after the accident, and seemed to have little recollection of the details. He testified principally from notes made in his accident report. His notes indicated “slight” damage to the Oldsmobile. Photographs of the Oldsmobile taken a few days later and filed in evidence show it to be a car in apparent perfect condition with not a scratch or mark of any description on its bumper, grill or fenders to indicate the slightest impact. Williams stated that nothing has been done to change its condition from the time of the accident to the date of the photographs. We have no reason to doubt his statement.
*677 Williams said there was no physical contact with the cab. He said that, upon seeing the approaching headlight reflection and hearing the cab on Fig Street, he pulled into the intersection about 3 feet and stopped. (It is a blind corner with a building adjacent to the sidewalk along both streets.) He testified:
“ * * * I pulled up in the intersection and stopped practically about three feet, I got out in the intersection and while I was stopped, after I was stopped out there, well, the cab never entered the intersection and when he saw me he swung to his right, he was coming on the left-hand side of the street and he swung to his right to miss me. Now, if he don’t swing to his right, he would have hit me, but he swung to his right and he had one wheel sliding on the car, he had his brakes on at that time, and he was coming such a force of speed that he went around me to the right and when he went to the right he swung back to his left and the cab was standing on two wheels and he took his left and hit this fellow’s car over here on the left.
“Q Did this cab ever strike your car?
“A It didn’t strike my car.”
The testimony of Mrs. Williams was substantially the same, and we find that there was no physical contact between Williams’ car and the cab.
The cab, after the alleged impact with the Oldsmobile, continued across Broadway. It struck the parked Ford, which was 25 feet past the intersection, with a force sufficient to practically demolish it and do an alleged $431.93 damage to the cab. The cab rammed the Ford on its right side at about a 45-degree angle, and knocked it against the storm sewer cover with sufficient force to break the left front wheel. These physical facts tend to corroborate the testimony of Williams. It is inconceivable that the cab entered the intersection at a speed of 10 to 15 miles per hour as Manasco testified.
We are not impressed with the testimony of Mr. Manasco taken by deposition and admitted in evidence due to his unavailability for trial. The testimony of the investigating police officer whose testimony, given from notes and without much recollection of the incident, was also not convincing. These were the principal witnesses upon whom the cab company defendants relied to prove the alleged negligence of Williams and Manasco’s freedom from fault.
We have no difficulty in concluding that the sole proximate cause of the accident was the negligence of Manasco in entering the blind intersection at an excessive speed without regard for the traffic on Broadway. By his own admission he did not see the Oldsmobile until the moment of the alleged impact, although he said he looked both ways before entering the intersection. Because of the building on the corner obstructing the view of both drivers, neither could have seen the other any great distance from the corner. This condition imposed upon both drivers an added measure of duty to approach the intersection with caution. The facts indicate that Williams did, but that Manasco did not. The trial judge was correct in so holding.
The plaintiff Johnson had purchased the used 1956 Ford automobile less than ten days before the accident for the price of $416.85. The bill of sale from Dixie Auto Sales, filed in evidence, shows $300 cash paid, plus tax and extras amounting to $21.85, with $95 balance payable in three monthly installments. Upon Johnson’s request an estimate of repair was made a few days after the accident by a qualified repairman, who testified in support of his estimate. The estimate totaled $417.10.
Plaintiff testified that he attempted without success to get the defendants to make an estimate, but that they gave him “the runaround.” He said he was financially unable to repair the car and that it remained on the street for several months. *678 In the meantime plaintiff sold the motor and other parts as salvage for $68. It was struck again by another car before being towed away by the police as junk.
Defendants offered the testimony of James H. Sturcke, a qualified repairman who inspected plaintiff’s car on November 27, 1964, ten months after the accident. In the meantime the engine and three wheels had been removed. He testified that he would have repaired it for $125. Obviously he was dependent on hearsay information of the necessary repairs prior to the stripping of parts. Sturcke also stated that its value before the accident, in his opinion, would have been $175 to $200. His testimony is unrealistic and is based on an inspection made many months later when the physical condition had changed materially. We cannot give any weight to it.
The measure of damages is the value of the car. The automobile must be treated as a total loss where the cost of repairs exceeds the value of the car. Also, where the estimated cost of repair exceeds the value of the car, plaintiff’s right to recovery is limited to the value of the car. Crabtree v. Home Indemnity Company, 185 So.2d 820 (La.App.2d Cir. 1966); D & D Planting Co. v. Employers Casualty Co., 123 So.2d 833 (La.App.2d Cir. 1960) (writs granted and judgment reversed on other issues); Greenberg v. New Orleans Public Service, 74 So.2d 771 (La.App. Orleans 1954); Heyden v. Dubos, 56 So.2d 276 (La. App. Orleans 1952); Herbert v. Langhoff, 164 So. 262 (La.App. Orleans 1935); Luttegeharm v. Pelican Cracker Factory, Inc., 161 So. 625 (La.App.2d Cir. 1935); Hinton v. Tri State Transit Co. of Louisiana, 151 So. 116 (La.App.2d Cir. 1933); Burrage v. Tri State Transit Co., 149 So. 125 (La.App.2d Cir. 1933); Adams v. Bell Motors, 9 La.App. 441, 121 So. 345 (2d Cir. 1928). The only exceptions we have found to this rule are in cases where the repairs were actually made.
Other than the bill of sale, the only evidence of the value of plaintiff’s car is the testimony of Mr. Sturcke, which we have rejected for the reasons stated above. We accept the price paid by plaintiff for the car as the best evidence of its actual value. It must be assumed that he paid no more than necessary when he purchased it less than ten days before the accident. Vaccaro v. Favrot, 170 La. 483, 128 So. 284 (1930); Vaccaro v. Favrot, 13 La.App. 120, 125 So. 296 (Orleans 1929); Heyden v. Dubos, supra; Burrage v. Tri State Transit Co., supra; Luttegeharm v. Pelican Cracker Factory, Inc., supra.
Plaintiff’s damage claim for the loss of the use of the car in transporting his children to and from school is without merit, and will not be considered.
We will deduct $68 (which plaintiff realized from salvage) from the value of his car at the time of the accident, $416.-85, and fix his actual damage at $348.85.
The judgment appealed from in proceeding No. 2713 in favor of plaintiff Edward Johnson, Sr., against the defendants Edward Bourquard, James E. Manasco, and Checker Cab Company of New Orleans, Inc., jointly, severally, and in solido in the sum of $417.10, is amended and reduced to the sum of $348.85. As amended, it is affirmed.
The judgment appealed from in proceeding No. 2714, in favor of defendants Isaac J. Williams and General Guaranty Insurance Company against the plaintiff Edward Bourquard, rejecting plaintiff’s demands and dismissing his suit, is affirmed.
Appellants are cast for all costs.
Amended and affirmed.