BARNETTE, Judge.
This is a suit for property damages arising out of a collision of a dump truck and a station wagon. Harry Scott, the owner of the dump truck, brought suit against Mr. and Mrs. James Daigle and their liability insurer, Maryland Casualty Company. The defendants denied liability and in reconvention sought recovery of judgments in the amounts of $100 and $959.25, respectively, being the cost of repair of damages to the station wagon. The $100 represented the deductible amount paid by the insured, the Daigles, and the $959.25 represented the amount paid by the collision insurer subrogee, Maryland Casualty Company.
The trial court rendered judgment dismissing the demands of the plaintiff and granting damages in favor of plaintiffs in reconvention, Mr. and Mrs. James Daigle and Maryland, against Harry Scott, defendant in reconvention, in the amounts of $100 and $959.25, respectively. The plaintiff, defendant in reconvention, Harry Scott, has appealed suspensively.
An exception of prescription was timely filed in this court by defendant in reconvention, Harry Scott, plaintiff-appellant. LSA-C.C.P. art. 2163. The exception is good and will be maintained. The accident in question occurred on May 5, 1964, and plaintiff’s suit was filed on May 5, 1965. Answer and reconventional demand of Mr. and Mrs. Daigle was filed on May 18, 1965, and the answer and recon-ventional demand of Maryland Casualty Company was filed on June 4, 1965. Clearly both reconventional demands were filed after the prescriptive period of one year had expired. LSA-C.C. art. 3536.
We will now address ourselves to the question of negligence and proximate cause of the accident; a question made more difficult by conflicting testimony.
On May 5, 1964, plaintiff’s minor son, Lawrence Charles Scott, was driving his father’s Ford dump truck loaded with dirt on Louisiana Highway 306 in a northerly direction. The two-lane asphalt surface highway passes in front of the residence of Mr. and Mrs. James Daigle. As the dump truck approached the paved driveway leading to the Daigle residence, Mrs. Daigle was backing out of the driveway in a Ford station wagon. The two vehicles collided at a point where the driveway enters the highway. Both vehicles were extensively damaged, but there were no personal injuries. The issue most seriously disputed is whether the collision occurred on the highway near the center line as plaintiff contends or some 2 feet off the highway on the Daigle driveway as defendants contend. For reasons which will appear below, we will give a detailed description of the damage to the dump truck.
The right rear dual wheels of the truck struck the right rear corner of the station wagon. The truck’s tires were blown out; the wheel pulled out of the lug holes which hold it to the axle; the chassis (frame) was bent; the spring and overload spring were broken and the bolts which attached them to the truck were broken; the universal joint was broken; and the drive shaft pulled out. The truck continued a distance of approximately 150 feet from the point of impact and came to rest on the right shoulder of the road. The damaged right rear wheel and spring assembly caused the heavily loaded truck to lean sharply in that direction, which, together with the narrow sloping road shoulder alongside the ditch, made it appear to be *176 almost resting on its side. This we think accounts for variance in testimony of the witnesses as they described it as resting on all four wheels; left rear wheel up off the ground; being on its side, etc. Furthermore some of the witnesses apparently were not very adept in giving accurate descriptions and this is just one of the circumstances about which there was variance in the testimony.
The truck driver Lawrence Scott’s version of the accident was that he was proceeding in a northerly direction and as he approached the Daigle home on his right he saw the Ford station wagon backing out of the driveway. He was travelling at a reasonable speed, about 35 miles per hour. When it became apparent to him that the station wagon was not going to stop he applied the brakes and swerved his truck to the left in an attempt to avoid collision, but the station wagon collided with the truck just forward of the right rear wheel. He fixed the point of impact at about 2 feet from the center line of the highway. He testified that a mark was left on the highway by the damaged wheel indicating the point of impact and that “black top” (asphalt) was visible on the rim. He also said a truck was parked off the road opposite the driveway and that the station wagon was moved before the investigating officer arrived on the scene.
Two witnesses testified in corroboration of the truck driver’s testimony. Herbert Nedd said he had been following the truck for about 3 miles at a distance of 150 to 200 feet. From this vantage point he witnessed the impact. He testified that he saw the car backing out onto the highway from a distance of 150 to 200 feet. He testified :
“Q: How far did it back up ?
“A: Out in the road.
“Q: How far out into the road ?
“A: I would say about six to eight feets [sic] out in the road.
“Q: Which part of the car was six to eight feet?
“A: Back part.

“Q: Would you describe in relation to the center line of the road to the rear end of the car, could you tell the distance that the rear end of the car was away from the center line?
“A: About two feet from the white line, something like that.
“Q: Did you see the impact itself?
“A: Yes.
“Q: What part of the truck and the car came into contact?
“A: Right between the rear wheel and the cab.
“Q: Would you describe what occurred when the impact took place?
“A: Yes. The truck went out of control, after the man tried to duck and hit it it went out of control and he turned over.
“Q: Where did the truck turn over?
“A: Oh, on the side of the road.
“Q: Would you describe the position of the truck?
“A: Well, I didn’t pay too much attention, it turned over on the right side.
“Q '■ Was any part of the truck touching the ground ?
“A: Yes, the right side.
“Q: Could you be more specific what part of the truck?
“A: Well, the right side, the rear, the right rear was hitting the ground, turned over.
“Q: Were all four of the wheels on the ground ?
“A: No.
*177 “Q: Which wheels were not on the ground ?
“A: The right wheel was on the ground and the left up, part of the front was kind of an angle like.”
When asked to describe the movement of the truck immediately prior to impact, he said the truck driver tried to go around the station wagon and pulled to his left to “about middle ways of the road.” He said the station wagon did not stop before the impact. On cross-examination he was questioned about an “obstruction” to the left of the truck on or near the highway. He denied seeing any. When asked specifically about “a red .pickup truck parked alongside the road” he answered, “I didn’t see any.” The question and answer were repeated. He was pressed on cross-examination for his basis for estimates of distance and finally was asked: “Well then how did you arrive at the figure that Mrs. Daigle was six to eight feet out into the road when the accident happened ?” He answered: “Because I seen it.”
The other alleged witness to the accident was Isaac Evans.-He was proceeding in the opposite direction and estimated the distance from which he witnessed the collision to be about one-half mile. Whether his estimate of distance is accurate, we have some doubt, but we believe it was possible for him to have seen the collision from the distance he described since the road at that point is straight and the view was unobstructed by other vehicles at the time in question.
Evans testified he saw the dump truck before it reached the driveway and said: “He was in the right lane but he ducked over in the left lane.” He fixed the point of impact about 6 or 8 feet out onto the highway, about 2 feet from the center line. He said he saw Mrs. Daigle get out of the station wagon and run into the house with her little daughter who had been with her in the automobile.
Evans also testified that he stayed at the scene of the accident until after the police officer came to investigate and that two men whom he pointed out in the courtroom (identified by the trial judge as Wave Ho-tard and James Daigle) moved the station wagon out of the highway by pushing it into the driveway before the officer arrived on the scene. He said there was a mark on the highway made by the truck tire blowout. He described the damage to the truck in the following language:
“A: The rear wheel on the right was knocked back and by him being broke a loose from the chassis, the chassis looked to me like it was bent, the wheel on the left was rubbing up against the chassis because the two wheels on the right was bio wed out and went on the edge of the ditch and turned on the side.
“Q: Would you describe the condition of the wheels as you saw them, the right rear wheel?
“A: The right rear wheel and the drive shaft was dragging on the ground.
“Q: Pardon me ?
“A: The right rear wheel and the drive shaft was dragging on the ground. The right rear wheel was flat, it was rubbing against the body because it was loaded with a load of dirt.
“Q: Both of the right rear wheels were flat?
“A: That’s right.”
The presence of the truck parked on the road shoulder opposite the driveway, described by Evans as a yellow cattle truck, a “big dual wheel truck,” at the time of the accident, is the subject of serious doubt. Furthermore his testimony that Mr. Daigle was on the scene immediately following the accident is confusing and if interpreted as saying that Mr. Daigle was there when he arrived on the scene it cannot be accepted as true, as will be shown later.
*178 In contradiction of the foregoing testimony there is the testimony of Mrs.- Daigle who said that she stopped about a foot and a half before reaching the roadway and that the collision took place in her driveway. She said she saw the truck approaching ; that she stopped; that the truck was running at an angle as if out of line with the back end extending out onto the road shoulder. She said that she was powerless to avoid the collision because the truck came across her driveway where the impact took place and then proceeded on the road shoulder until it came to rest. She admitted getting out and runing in' the house with her little girl.
Roland Daigle, son of Mr. and Mrs. James Daigle, was painting a house about 130 yards north of the Daigle home. Upon hearing the crash he went to the scene of the accident and remained only a brief time. He then went into his mother’s home and called his father by telephone. Mr. Daigle came immediately from a distance of about 6 miles in a red pickup cattle truck and parked opposite the driveway. There was no other truck there. Young Daigle stayed in the house until his father came. He testified that he saw tracks leading up to the dump truck but he did not examine them. He said the marks left in the driveway by his father’s station wagon were about 7 feet from the edge of the road. He denied knowing that anyone had moved the station wagon before the officer arrived.
Mr. James Daigle testified to tire tracks leaving the asphalt roadway about 10 feet south of his driveway, across his driveway and to the dump truck about 150 feet north of the driveway. He said when he arrived at the scene the station wagon was sitting in the driveway “kind of' crossways off to the right side back end off to the right side.” He testified that the police officer came shortly after he arrived but denied that he or anyone had moved the station wagon before the officer arrived.
The witness Wave Hotard, identified by Evans as one who helped move the station wagon, denied that he or anyone to his knowledge had moved the station wagon.
The police officer, Sergeant Charles Pinero, said the station wagon “was parked in her [the] driveway” when he arrived on the scene; that there was debris in the driveway and “dirt tracks” across the driveway leading to the truck. His testimony about the tire tracks is of significance, since it was one of the factors most strongly relied on by the trial judge in resolving the facts against Scott in favor of Daigle.
The officer described the tracks as “dual wheel tracks” leading up to the truck; that they were “pretty deep” and that they were the same on the north and south side of the driveway. Upon being questioned further on this point he repeated that there was no change in the tracks from the south side of the driveway to where they led up to the truck. This testimony was given great weight by the trial judge.
One other factor considered by the trial judge to be highly significant was the denial of the truck driver, Lawrence Scott, that he was ever convicted of reckless driving when he in fact had pleaded guilty to such charge. There was filed in evidence copy of bill of information filed September 2, 1965, charging Lawrence Scott with careless and reckless driving in connection with the accident of May 5, 1964. The allegations of fact upon which the charge was based were that Scott operated the truck without a chauffeur’s license and with an expired license plate. Notations written on the bill of information show that Scott was arraigned and pleaded guilty and was fined $65.
In denying motion for a new trial, the trial judge said:
“This Court gave no weight to plaintiff’s testimony because he stated from the stand that he had not entered a guilty plea to nor been convicted of reckless operation charge arising from this accident. The record proved this statement false — falsus in uno, falsus in omnibus.
“This Court gave no weight to the eye witness Nedd because he testified the *179 accident happened on the road: that the truck was never on the driveway — yet Trooper Pinero conclusively traced the path of the truck from the shoulder of the road across the driveway back onto the road shoulder to its final resting place.
“This Court gave no weight to the testimony of the eye witness Evans because when he arrived at the scene only moments after the accident he testified that the defendant Daigle was there. The un-controverted testimony shows Daigle was at work several miles away when the accident occurred and did not arrive at the scene for quite some time.”
We are fully cognizant of the great weight which should be given to the findings of fact of the trial judge, but we cannot agree with the findings in this case on the evidence in the record before us on this appeal.
The reason given for disregarding the testimony of Lawrence Scott we do not think is sufficient. We have considerable doubt that this uneducated youth fully understood the criminal implications of the reckless driving charge. He never denied that he had no chauffeur’s license and explained that he had applied for one but was told to come back on another day because licenses were not issued on “Tuesday.” He did not deny the expired truck license. Having admitted these charges he paid the fine imposed. We seriously doubt that there was anything about the entire procedure from which Scott could have drawn an understanding of its correct legal implications.
The rejection of the testimony of the witness Nedd who actually saw the collision merely because it was in conflict with the testimony of the police officer relative to the tracks alleged to have been left by the truck on the Daigle driveway, we think, was not warranted. We described above in some detail the extensive damage to the back axle, spring, drive shaft, frame and wheel assembly of the truck to show the improbability that the alleged truck tracks before and after the impact would appear to be the same. Considering the damage to the entire rear axle assembly of the truck which the witnesses vividly described, it is' incredible to us that the track left by the right rear wheel of the heavily loaded truck along the dirt shoulder a distance of 150 feet would have appeared no different from that made on the south side of the driveway before such extensive damage. It is more reasonable to assume that the shoulder would have been considerably torn up leaving no doubt what caused it. We can only conclude that there is a strong probability, and certainly the possibility, that the track described by the officer was made by another vehicle at another time. This circumstantial evidence cannot overcome the unequivocal statement of an eyewitness. It is significant also that the officer apparently was satisfied to rest his investigation upon his observations without consulting the witnesses present. Evans testified that the officer “Mr. Charlie” (Pinero) said: “I don’t want to talk to nobody” and for that reason he did not give the officer a statement.
The accuracy of the testimony of the witness Evans is subject to some question, the presence of a cattle truck opposite the driveway when he saw the accident and when he arrived on the scene does not seem to be supported by the other testimony. Furthermore his statement that Mr. James Daigle was on the scene when he arrived only moments after the accident cannot be correct. There was, shortly after the accident, a red pickup truck with cattle body parked opposite the driveway, but this was the truck in which Mr. Daigle came to the scene after being called from his work 6 miles away. While we agree that the trial judge should not have accepted Evans’ testimony completely, we do not think the testimony of this disinterested witness should be entirely rejected.
We therefore hold that there is a preponderance of evidence sufficient to support a finding of fact in favor of the plaintiff. Having so found we hold that the *180 proximate cause of the accident was the negligence of the driver of the station wagon in backing onto the highway without stopping and without awaiting the clearance of traffic on the highway. A very high degree of care is imposed on the driver of a vehicle backing onto a highway. LSA-R.S. 32:124; Deville v. Aetna Insurance Company, 191 So.2d 324 (La.App. 3d Cir.1966); Josey v. Granite State Fire Insurance Company, 122 So.2d 303 (La.App.2d Cir.1960).
Plaintiff’s proof of damage to his truck is too inconclusive to form the basis of an award. He attempted to prove that the repair, based on a parts list and an estimate of labor necessary to restore the truck to its prior condition, would have been $539.60. We are not convinced of the accuracy of this estimate. Furthermore, the estimate exceeds the value of the truck. The truck had not been repaired at the time of trial and for all practical purposes it was a total loss.
The plaintiff purchased the second hand truck for $500. He paid $200 in cash and the balance by giving the quantity of scrap steel valued at $300. The date of purchase is not known. He was asked when he bought it and said: “I don’t exactly know the date but I bought it about two months before I started; but I just don’t know it.” There is no other evidence from which we can determine how long he owned it before the accident. Scott removed a flat body and replaced it with a dump body to haul dirt. He bought three tires for approximately $90 each. Herman J. Toups, a repairman who serviced the truck for Scott and who made the estimate of repairs, testified from his knowledge of the truck that it was in good running order before the accident.
Rather than remand the case for more specific proof of damage we believe a more practicable and just disposition under LSA-C.C.P. art. 2164 would be to fix an award of damage on the basis of the value of the truck at the time of the accident. Johnson v. Williams, 201 So.2d 674 (La.App. 4th Cir.1967), and cases cited therein. Considering the cost of the truck, its enhancement in value by purchase of new tires and substitution of body, offset by some depreciation, we hold $500 to be reasonable.
Plaintiff’s claim for damages for loss of use of the truck is not supported by any evidence whatever.
For these reasons the judgment appealed from is reversed and judgment is now rendered in favor of the plaintiff, Harry Scott, against Mr. and Mrs. James Daigle and Maryland Casualty Company in solido in the sum of $500 with legal interest thereon from judicial demand and all costs of court. It is further ordered, adjudged and decreed that there be judgment in favor of Harry Scott, defendant in reconvention, against Mr. and Mrs. James Daigle and Maryland Casualty Company, plaintiffs in reconvention, rejecting their demands and dismissing their petition in reconvention at their cost.
Appellees are cast for cost of this appeal.
Reversed and judgment rendered.