YARRUT, Judge.
Plaintiff brought this suit against his comprehensive insurer for $2,540.00, claiming that two of his insured automobiles, a 1961 Ford Station Wagon, and a 1961 Thunderbird Convertible, were each rendered a total loss as the result of flooding from Hurricane Betsy. O. E. Haring, Inc., alleging it repaired the automobiles, intervened for a judgment of $347.95 against both Plaintiff and Defendant.
The Trial Court rendered judgment in favor of both the Intervenor and the Plaintiff, and against Defendant; in favor of Intervenor for $347.95, and in favor of Plaintiff for $2,000.00.
Defendant appealed only from the judgment in favor of Plaintiff. Hence, the intervention is not an issue on appeal.
The only competent evidence regarding the value of the automobiles is the testimony by F. A. Keller, Defendant’s adjuster who handled the claim. He testified that the Station Wagon was worth about $800.00 or $900.00, and the Thunderbird approximately $1200.00 or $1300.00.
Although the Trial Judge gave no reasons for judgment, we conclude that he allowed the $800.00 estimate for the Station Wagon and the $1200.00 estimate on the Thunderbird when fixing the $2,000.00 amount awarded. To award the amount the Trial Judge must have determined the automobiles were, in fact, a total loss.
The three issues on appeal are: (1) whether or not the automobiles were adequately repaired; (2) if they were not returned in satisfactory condition, whether the Plaintiff or the Defendant was at fault; and, (3) whether, in any event, Plaintiff proved his automobiles were a total loss as a result of the Hurricane.
The witnesses were: (1) the Plaintiff; (2) H. R. Jackson, a mechanic who testified for Plaintiff; (3) Mr. Keller, the insurance adjuster already referred to, and (4) Walter Ybos, general manager of O. E. Haring, Inc.
Plaintiff testified he notified Defendant a few days after the Hurricane that his automobiles had been flooded; that two *520 weeks later Defendant towed the cars to O. E. Haring', Inc. for repairs; that he called Defendant several times to try to ascertain what repairs were being made to his automobiles and, in spite of the fact that he was assured that everything necessary was being done, he concluded from personal inspection that nothing was being done, causing him to consult a lawyer. He further testified that the cars were returned to him by a tow-truck ten months after the Hurricane and that neither has been driven since. Plaintiff’s testimony is conflicting concerning the number of times he visited O. E. Haring, Inc. to inspect his cars. First he testified that he had done this only twice, within a month after the Hurricane, but later he testified he had gone to O. E. Haring, Inc. twice after the instant suit was filed in December of 1965. He further testified he spoke to no one on his visits to the repair shop, but observed that no work was being done on his cars, which was confirmed when the cars were returned on August 17, 1966, at which time he observed that certain parts of the automobiles were rusted, and the automobiles would not start.
Testifying for the Plaintiff was Mr. Jackson, a mechanic who inspected the automombiles approximately two years after the repairs were allegedly made. He observed that almost all parts of the automobiles were covered with rust and what he termed “old grease”. However, he could not testify that no repairs were made two years before his inspection. On that point his testimony is as follows:
“Q. As an expert you’re willing to certify that no work was done?
A. Right.
Q. How about in ’65?
A. I don’t know.
Q. Could it have been done in October of ’65?
A. That I wouldn’t know.”
Testifying for Defendant were: Mr. Keller and Mr. Ybos. Mr. Keller testified that, in his opinion, the repairs to the automobiles would not cost as much as their total value; that he road-tested the automobiles in the latter part of October, 1965, and found them operable; and that all necessary repairs had been made except for glass breakage on the two vehicles. Mr. Ybos testified that, although all necessary repairs had been completed by the latter part of October, 1965, the Plaintifff never came in to pick up his automobiles, and that it was only when he was informed in August, 1966¡ that O. E. Haring, Inc. was going out of business and cars had to be removed from his shop did Plaintiff hire a tow-truck to haul them away.
With regard to the first issue, i. e., whether repairs were ever made, there is serious doubt whether Plaintiff proved that they were, in fact, not completed. Moreover, by awarding Intervenor the entire amount of its repair bill, the Trial Court implicitly decided that some repair work had been done. Regarding the second issue as to whose fault it was that the vehicles deteriorated, the Plaintiff admittedly made no attempt to see that the cars were repaired and, in fact, did not bother to complain to anyone at O. E. Haring, Inc., nor try to test the vehicles himself after the repairs had allegedly been made. He allowed the automobiles to remain idle at O. E. Haring, Inc. for ten months and to remain idle, while parked in front of his home, for fourteen months. Thus, he did nothing to mitigate his damages.
However, assuming arguendo, that the Trial Judge could have made a correct factual determination that adequate repairs were not made through Defendant’s fault, we find that Plaintiff’s case fails because of the third issue. Plaintiff did not prove an essential element of his case, i. e., that the automobiles were each a total loss immediately following the Hurricane. He had no mechanic inspect the vehicles until approximately two years after they had been allegedly repaired.
*521 It has been held that an automobile is a “total loss” when the cost of repairs exceeds the value of the vehicle. Johnson v. Williams, La.App., 201 So.2d 674, and cases cited therein. In order to prove that a vehicle is a total loss one must introduce evidence as to how much it would cost to repair the vehicle after it has been damaged. Daspit v. Midstates Marine Insurance Company, La.App., 209 So.2d 66.
There is no evidence to show how much it would have cost to repair the vehicles following the Hurricane. Thus Plaintiff has failed to prove that the automobiles in question were a total loss.
Accordingly, the judgment of the Trial Court is reversed, and judgment is now rendered in favor of Defendant and against Plaintiff rejecting Plaintiff’s demand and dismissing his suit. Plaintiff to pay all taxable costs in both Courts.
Judgment reversed.