CIACCIO, Judge.
Plaintiff, a building contractor sued the defendant, property owners, for certain funds allegedly due for the repair and renovation of residences located at 1520 Dante Street and 7821 Belfast Street in New Orleans. The defendant reconvened for damages for breach of contract and to recover monies which the plaintiff was allegedly overpaid for the work performed on his Belfast Street residence. The main demand was severed from the reconventional demand and these causes were tried separately.[1] This appeal involves only the disposition of the reconventional demand.
Pursuant to the recommendation of the Commissioner, the trial court awarded the plaintiff in reconvention, Edmund Leininger the sum of $450.00, expert fees of $500 and all costs. In rendering its judgment, the trial court adopted the findings of the Commissioner. The Commissioner found that the defects were apparent and that the daily inspections by the owners, as well as their written approval and disbursement of funds, constituted an acceptance of the workmanship. The Commissioner also found that the condition of the bracing in the attic was not readily apparent upon inspection and was compensable as a defect which was not encompassed by the acceptance. Both parties appeal from the judgment of the trial court. However, in his brief before this Court the defendant-in-re-convention, Arnold Boudreaux, has formally withdrawn his appeal.[2] Since we find no error in the ruling of the trial court we affirm its judgment.
The plain iff in reconvention presents three issues for our consideration: (1) Did the trial court err in finding that the Lein-ingers had accepted the work performed (2) Did the trial court err in finding that Bou- *1110 dreaux had corrected the defective workmanship and (3) Did the trial court err in failing to find that Boudreaux had been unjustly enriched.
A fire occurred in the Leininger residence located at 7821 Belfast Street. The fire started on the front porch. It burned through the wall into the sitting room and bedroom. The fire spread to the front of the attic and came out the back of the attic. Smoke and water damage was sustained throughout the entire house. As a result of the damage sustained, Aetna Insurance Company agreed to pay the sum of $66,051 for the repair of the house.
Leininger hired Boudreaux, on the basis of an oral contract, to perform the repair and remodeling of his house at 7821 Belfast and to perform the repair of a sill at the Dante Street property. The Belfast property involved considerable repair due to the fire damage. Additionally, it was agreed that a new kitchen would be installed and changes would be made in a downstairs rental apartment of the Belfast residence. According to Leininger the entire repair and renovation was to be performed for the amount of the insurance proceeds (i.e., $66,051). In order to upgrade the house and install a new kitchen it was agreed that funds could be saved by replacing the damaged slate roof with fiberglass shingles. It was also agreed that for the same price new sheetrock could be installed and painted rather than stripping the old wallpaper.
On the basis of the verbal agreement of the parties the work on the premises proceeded with the plaintiff subcontracting much of the work to his son. During most of the renovation time the Leiningers were living in a rented residence adjacent to their damaged home. The Leiningers often visited their home to inspect the progress of the repairs. The casualty insurer, Aetna Insurance Company, disbursed the insur-anee proceeds periodically during the repair process. The funds, which totalled $67,-196, were paid to the insured, Edmund Leininger and the mortgage holder, Dryades Savings. Certain of these funds were thereafter disbursed to Arnold Bou-dreaux upon the inspection and approval of Dryades Savings and Edmund Leininger.[3] Additionally, Arnold Boudreaux received a direct payment from Aetna Insurance Company on September 28, 1981 of $2,832.16.
Near the completion of the work and following the last homestead disbursement, Leininger was found, by Boudreaux to be reluctant to disburse any further funds. According to Boudreaux a meeting was held with the homestead personnel and Boudreaux. Following this time, Bou-dreaux was paid $15,000 by Leininger. According to Boudreaux, a punch list was received after the job had been accepted and those complaints, which involved work agreed upon by the parties, were remedied. According to Leininger, he did not turn over the entire proceeds of the last disbursement by the insurance company to Boudreaux (i.e., $26,003.00) because the contractor had not completed the job and he had been overpaid.
In addition to the $59,025.11 received by Boudreaux, Leininger claims to have paid the sum of $11,050.89 directly to various job suppliers and subcontractors. According to Leininger, these payments were made because he feared that liens would be placed against his property for his failure to pay.
This suit was instituted on December 2, 1981. Trial on the main demand was held November 2-4, 1983. Trial on the recon-ventional de? and was held on February 21, 1985. However, on March 15, 1984, prior to the trial on the reconventional demand, the Leiningers sold the property at 7821 Belfast Street for $163,000.
*1111 Leininger contends that he did not accept the job and that he is entitled to an increased award so as to compensate him for Boudreaux’s unworkmanlike performance and for the overpayment for work performed. We disagree.
Generally, a contractor who fails to execute the contract in the manner agreed upon is liable in damages for the loss occasioned by his non-compliance, La.C.C. Art. 2769. In a case of substantial compliance, the owner is entitled to a reduction in the price to such a degree as will enable him to complete the work in accordance with the terms of the contract. See: Neel v. O’Quinn, 313 So.2d 286 (La.App., 3rd Cir. 1975), writ ref. 319 So.2d 440.
Although Leininger urged at trial and reurges in brief that the repairs to the roof, attic, sheetrock and windows were performed in a defective manner, that the house painting was unsatisfactory and that items of plumbing and electrical repairs were done improperly or not at all, Leininger elected to sell his house prior to trial without having repaired the defective items of which he complains. Under these circumstances, the proper measure of damages would have been the diminution in market value caused by the defective repairs. See: Hinton v. Tri-State Transit Co. of La., 151 So. 116 (La.App., 2nd Cir., 1933).
The only evidence of market value in the record is the proffered testimony of Frank Tromatori, a licensed real estate appraiser. Mr. Tromatori had appraised the house on February 21, 1984, preparatory to a sale and mortgage. The house and lot appraised for $163,000. Mr. Tromatori reviewed the photographs introduced into evidence by Leininger, which reflected the condition of the sheetrock, stained floor, window alignment and other complaints. This witness testified that the conditions reflected in the photographs were not significant enough to affect the market value of the property. Leininger offered no evidence in support of a diminution of market value.
Since Leininger could not have made the repairs subsequent to the sale of the house, and in the absence of any proof of diminution of market value, there is no evidence in the record to support his reconventional demand for the alleged improper or defective workmanship. Accordingly we find no error in the judgment rejecting his recon-ventional demand. For this reason it is not necessary for us to determine if Leininger had accepted the repairs, as found by the trial court.
Leininger also argues that he was compelled to pay suppliers and subcontractors directly for bills that were actually Boudreaux’s obligations, resulting in Bou-dreaux being overpaid and unjustly enriched.
In his report, the Commissioner stated:
Leininger reasonably expected to at least pay the amount of the fire insurance proceeds for the renovations. The evidence establishes that payments to Boudreaux and his materialmen, including payments made directly by Leininger, total less than the amounts paid by Aetna Insurance Company for the fire damage.
The record supports this finding and we find no error in this regard. Canter v. Koehring, 283 So.2d 716 (La., 1973).
The record reveals that Leninger’s payments to the suppliers and subcontractors were neither with the consent or authorization of the prime contractor. The contractor disputes the necessity and correctness of the payments. Additionally, of the subcontractors called to testify, each stated that he did not threaten to file liens against the Leininger property nor did any of the suppliers or subcontractors file liens against the property.
Leininger elected to make these payments without Boudreaux’s consent or authorization, and the payments were made without liens having been filed against the property. Under these circumstances Lein-inger’s recourse to recover the alleged overpayments is against the suppliers and *1112 subcontractors who may have been overpaid.
For the reasons assigned we affirm the judgment of the trial court at the cost of the defendant in reconvention, Arnold Bou-dreaux.
AFFIRMED.

. The appeal of the main demand was decided by this court in Boudreaux v. Leininger, 475 So.2d 1113 (La.App., 4th Cir., 1985).

. Therefore insofar as the trial court judgment ordered the defendant in reconvention to pay the sum of $450 in damages, $500 expert fees, and all costs of those proceedings, that judgment is final.

. The payment schedule was as follows:
1. On 4/28/81 Dryades Savings paid Bou-dreaux $19,949.00
2. On 5/26/81 Dryades Savings paid Bou-dreaux $15,104.00
3.On 6/24/81 Dryades Savings paid Bou-dreaux $6,139.95