CIACCIO, Judge.
Plaintiffs contracted for defendant to construct a house and garage according to certain written plans and specifications. After construction was complete plaintiffs were dissatisfied with certain aspects of the construction which they considered defective. Defendant made several efforts to remedy the alleged defects. Plaintiffs, however, continued to have complaints, and filed this suit despite defendant’s open offers to repair some things with which plaintiffs remained dissatisfied, including the garage. Of the seven items of complaint *1263 listed in the petition the trial judge found in favor of defendant on four and in favor of plaintiffs on three. Plaintiffs did not appeal. Defendant appeals only from that portion of the judgment which awards plaintiffs sixteen thousand ($16,000.00) dollars to rebuild the garage. We amend and affirm.
Plaintiffs’ complaint about the garage is that the door apparently leaks. Plaintiffs testified that occasionally they would find puddles of water on the floor just inside the door. There is no direct evidence as to the origin of the water. Some witnesses appear to rely on speculation that the water must leak in under the bottom of the door. One expert thought that the water may be entering along the sides of the door where the track on which the door rides when raised and lowered is attached to the garage.
Defendant attempted to remedy this problem. Mr. Henning scribed the door to follow the contour of the concrete on which the closed door rested. He then added pliable rubber stripping to the bottom of the door to insure a flush tight fit between the door and the concrete. He tested this repair by hosing water at the bottom of the closed door, and he detected no leaks.
Plaintiffs continued to complain of occasionally finding water on the floor near the door in the right, front corner of the garage between the garage door and the personnel door on the side of the garage. Defendant offered to lay an additional two inches of concrete on the garage floor. This would allow the garage door to rest on the concrete at the level of the driveway two inches below the level of the concrete added to the floor and should prevent water from entering the garage from under the door. Plaintiffs did not respond to defendant’s offer to repair, but instead filed this suit.
At trial Mr. Roy Cadow, qualified by plaintiffs as an expert general contractor, testified that adding a layer of concrete to the garage floor could be used as a method of repair, but that he could foresee potential problems with that approach. His preferred approach would be to demolish the existing structure and rebuild the garage at an estimated cost of sixteen thousand ($16,000.00) dollars. He offered no breakdown to justify his cost estimate.
Mr. Cadow also testified that in general the construction quality of both house and garage was good, better than average. He opined the cause of the water puddles in the garage to be that the garage floor just inside the door was at the same elevation as the driveway just outside the door. The floor rises in elevation towards the rear of the garage and the driveway slopes downward toward the street. He also interpreted the blueprints for construction as requiring the slab for the garage to be at the same elevation as the slab for the house because one of the drawings in the blueprints contains a similar notation for both house and garage which reads “slab elev + 1.50.” Relying on a survey which indicates the garage slab to be approximately three (3") inches lower than the house slab, he considered this discrepancy to be a defect in construction, a failure to follow the plans.
Mr. Sam Scandaliato, qualified by defendant as an expert civil engineer, testified that from his visual examination of the door he did not think that water was leaking in from under the garage door. He did not, however, test the door using water in any fashion, nor did he visit the premises on a rainy day. He also testified that there are engineering techniques for bonding additional layers of concrete to an existing slab. He considered that approach to be a perfectly acceptable procedure in this case, a procedure with which he could foresee no problems. He estimated the cost of adding two inches of concrete to the garage floor to be between $2 and $3 per square foot. The garage floor measures 400 square feet, so the maximum estimated cost for an additional two-inch layer of concrete was $1200.00.
Also, Mr. Scandaliato testified that the notations “slab elev + 1.50” on the draw *1264 ings of the house and garage indicated that the slab elevations would be at least 1.50 feet (18 inches) above the street curb and did not necessarily mean that the house and garage slabs would be at the same elevation. A minimum of 18 inches above the curb for slab elevations is a standard requirement and often the garage slab is constructed a few inches lower than the house slab. This is the interpretation testified to by defendant who was responsible for having had the drawings prepared as per his instructions. Both the garage slab and the house slab were constructed at an elevation greater than 18 inches above the curb.
As to the general quality of construction of , the garage Mr. Scandaliato agreed with plaintiffs’ expert, Mr. Cadow, that the quality was good, above average.
A well settled rule of appellate review is that the factual conclusions of the trier of fact should not be disturbed unless clearly wrong. In reaching its conclusions the trier of fact, based upon its evaluations of the witnesses, has much discretion to accept or reject in varying degrees the testimony offered by both lay and expert witnesses. State v. Wilco Construction Co., Inc., 393 So.2d 885 (La.App. 4th Cir.1981). Thus, absent manifest error this court may not substitute its collective judgment on the facts for the reasonable conclusions of the trier of fact. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), and Canter v. Koehring Co., 283 So.2d 716 (La.1973).
The trial judge apparently concluded that water does enter the garage and collect on the floor near the door. Evaluating the plaintiffs as credible, and there is no reason to think otherwise, this conclusion is not clearly wrong. The trial judge also apparently accepted Mr. Cadow’s testimony that the best way to remedy the problem is to demolish the existing structure and rebuild the garage. Based on the record before us, we find this conclusion clearly wrong.
Generally, a contractor who fails to execute the contract in the manner agreed upon is liable in damages for the loss occasioned by his non-compliance, La.C.C. Art. 2769. In a case of substantial compliance, the owner is entitled to a reduction in the price to such a degree as will enable him to complete the work in accordance with the terms of the contract. See: Neel v. O’Quinn, 313 So.2d 286 (La.App. 3d Cir.1975), writ denied, 319 So.2d 440 (La.1975). Boudreaux v. Leininger, 502 So.2d 1108, 1111 (La.App. 4th Cir.1987).
The garage is well constructed. There are no identifiable structural defects in either the slab or the building. Small amounts of rainwater collect on the garage floor. How this water enters the garage has not been established. Plaintiffs are apparently content to assume that the water seeps in under the garage door. Bonding an additional layer of concrete to the garage floor will prevent water from seeping in under the door. We find unreasonable and unsupported by the record the conclusion that this otherwise well constructed garage should be demolished and rebuilt.
The trial judge also accepted Mr. Ca-dow’s interpretation of the “slab elev + 1.50” notations as requiring that the house and garage slab must be constructed at the same elevation. While we do not agree, we cannot say that this conclusion is clearly wrong. An additional three (3") inches of concrete bonded to the garage floor would raise the garage floor to the same elevation as the house floor.
Plaintiffs complain that adding concrete to the garage floor will lessen the height of the garage door opening. While this is true, it has no legal significance in this case. Plaintiffs are concerned about the height of the opening because they own a pickup truck with a camper top which they say will not fit into the garage if the floor is raised. The issue in this case, however, is whether defendant satisfied his obligation to build for plaintiffs a house and garage according to certain, plans and specifications. At the time when the par *1265 ties agreed to the plans and specifications for construction, plaintiffs did not own the truck and camper unit they now wish to fit into the garage. That this truck and camper unit should fit was not part of the plans. Aside from the slab elevation, defendant constructed the garage according to the plans and specifications, but there was the problem of the rain water collecting on the floor near the door. Bonding a three-inch layer of concrete to the existing floor will raise the floor elevation to the same elevation as the floor of the house and will not interfere with the normal use of the garage, i.e., garaging of ordinary vehicles, or with plaintiffs’ present apparent use of the garage indicated by its set up as a woodworking-machine shop with several pieces of heavy machinery and special electrical wiring. From the descriptions provided in the record it is doubtful that any vehicles are ever garaged in the structure. The additional three-inch layer of concrete will also prevent ordinary rainwater from seeping in under the door. Plaintiffs will then have a garage built to the plans and specifications to which they agreed. We find no reason to demolish the garage and have it rebuilt.
Accordingly, we amend the judgment of the district court to award plaintiffs one thousand eight hundred ($1,800.00) dollars ($4.50/sq. ft. x 400 sq. feet) to compensate them for the cost of adding a three inch layer of concrete to the garage floor. The total damage award under the judgment to plaintiffs, therefore, is now two thousand nine hundred ($2,900.00) dollars. ($1,800.00 for the garage plus $1,100.00 awarded by the trial court which defendant did not appeal.) As amended the judgment is affirmed.
AMENDED AND AFFIRMED.